## In re ZIMMERMAN & FORSHAY.

### Ex parte GRAY.

(Circuit Court of Appeals, Second Circuit. July 6, 1926. Rehearing Denied.)

### No. 112.

Bankruptcy ⟨⟩345—Holder of draft, dishonored by drawee after transfer of credits from drawer's account, held entitled to preferred claim against bankrupt estate of drawer (Negotiable Instruments Law N. Y. [Consol. Laws N. Y. c. 38] § 111).

Where foreign drawee of draft, on receiving notice thereof, transferred credit from drawer's account to "drafts payable" account, but later dishonored draft because of intervening bankruptcy of drawer, reversed the credits, and remitted to receiver of drawer, held, holder of draft was entitled to preferred claim against estate of drawer for amount of draft, particularly in view of Negotiable Instruments Law N. Y. § 111.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of Zimmerman & Forshay; Gordon Auchincloss, receiver. From an order denying priority to the claim of Henry G. Gray, he appeals. Order reversed, and priority awarded.

The bankrupts sold to the appellant a draft drawn upon a Bohemian bank for 100,-000 Czech crowns. On the same day they credited the drawee with the draft on their books and advised it that they had so drawn. The drawee, before petition filed, received the advice, charged the face of the draft against the bankrupts' balance on its books, and credited it to another account entitled "Drafts Payable." The draft was presented and dishonored after petition filed, and the receiver procured a reversal of the credits by the drawee and a remittance of the full balance.

William E. Sims and Charles M. Kritzman, both of New York City, for appellant.

White & Case, of New York City (William St. John Tozer, of New York City, of counsel), for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. This is a companion case to In re Gubelman, Ex parte First National Bank of Trinidad, 13 F.(2d) 732, decided herewith. There are some differences in fact:

The bankrupts, as drawers, remained generally liable on the draft, and had made no specific contract with the holder (or drawer) to transfer any credit on the drawee's books. Thus the case is somewhat weaker for the appellant. Nevertheless it appears to us that the skeleton of the transaction is the same. Although it is not so proved, we think that we must assume that when, on receipt of the advice, the drawee made the entries upon its books, it did so in pursuance of a pre-existing agreement with the drawers. At any rate, it is proved that the drawee advised the drawers of what it had done, and there is no evidence that the drawers protested.

Upon that assumption we think that the drawers' advice must be interpreted as a request to the drawee to transfer the credit in

the way which it actually adopted. Moreover, when the drawers sold the draft, they promised that it should be paid on presentation. New York Negotiable Instruments Act (Consol. Laws, c. 38) § 111. Perhaps it is conceivable that the drawee would pay the draft without being then in funds, but banking is not ordinarily done in that way, and we think that the implied agreement of the drawers was that they would, either by remittance or by a transfer of credit, cover the draft before its due date. They chose to transfer the credit, and they succeeded, because the drawee had complied with their order before bankruptcy. The prior practice between the drawers and the drawee of stopping payment of such drafts is not shown to have been exercised inimically to outstanding drafts; certainly it was unlawful, if it was.

Order reversed and priority awarded.

ROGERS, Circuit Judge, through illness, was unable to take part in the decision of this case, but he had provisionally voted for affirmance.